# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NINA GREENE and GERALD GREENE, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SEARS PROTECTION COMPANY, )<br>SEARS, ROEBUCK AND CO., and )<br>SEARS HOLDINGS CORPORATION, )<br>)<br>Defendants. ) | No. 15 C 2546<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Before the Court is the defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Counts III and IV of plaintiffs' First Amended Class Action Complaint as well as defendant Sears Holdings Corporation [54], which is granted in part and denied in part for the reasons explained below. Also before the Court are plaintiffs' objections [116] to Magistrate Judge Mason's rulings on two of plaintiffs' discovery motions, which are overruled for the reasons explained below.

## BACKGROUND

In this action, plaintiffs Nina Greene and Gerald Greene, who are Pennsylvania residents, complain that from 1994 to 2014, they entered into and paid for several appliance-service agreements with the Sears, Roebuck and Company and Sears Protection Company that did not actually cover the service on their products. Plaintiffs also sue Sears Holdings Corporation ("Sears Holdings"). Defendants' motion to dismiss plaintiffs' previous complaint was granted in part and denied in part. The Court granted the motion as to Sears Holdings and dismissed it from this suit. The Court also granted the motion as to plaintiffs' claims for unjust enrichment

and violation of the Illinois Consumer Fraud Act ("ICFA"), which were dismissed without prejudice.

Plaintiffs subsequently filed the First Amended Class Action Complaint, which asserts claims for breach of contract (Count I); unjust enrichment (Count II); violation of the ICFA (Count III); and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PCPL") (Count IV). (ECF No. 51, Compl.)

## DISCUSSION

### A. Motion to Dismiss

#### 1. Legal Standards

When evaluating the sufficiency of a complaint, the Court construes it in the light most favorable to the plaintiffs, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiffs' favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

#### 2. Sears Holdings Corporation

The Court previously dismissed Sears Holdings as a defendant because plaintiffs' allegations established that it was not a party to the service agreements and plaintiffs offered no other basis for holding it liable. That remains the case with the amended complaint. Plaintiffs argue that they have stated unjust enrichment and consumer fraud claims against Sears Holdings.

The Court disagrees. Although plaintiffs have added allegations about Sears Holdings' employees' general involvement in drafting, pricing, marketing, and handling claims related to service protection agreements, as well as Sears Holdings' operation of call centers that handle questions about products and services, plaintiffs do not allege any facts from which it can be reasonably inferred that Sears Holdings retained any benefit as a result of plaintiffs' agreements. Plaintiffs therefore fail to state an unjust enrichment claim against Sears Holdings. *See Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 541-42 (Ill. App. Ct. 2008) (affirming dismissal of unjust enrichment claim where plaintiff did not allege that defendant had unjustly retained any benefit).

As for the consumer fraud claims, plaintiffs fail to allege any facts from which it can be inferred that Sears Holdings, in particular, made any misrepresentations to them or otherwise engaged in deceptive practices. Accordingly, plaintiffs also fail to state consumer fraud claims against Sears Holdings. *See Lagen v. Balcor Co.*, 653 N.E.2d 968, 976-77 (Ill. App. Ct. 1995) (stating that a plaintiff must "allege some sort of deception by the defendant to avoid dismissal" of an ICFA claim); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 512-13 (E.D. Pa. 2009) (dismissing PCPL claim against mortgage lender where the only misrepresentation plaintiffs alleged was by a different defendant and the claim against the lender was merely a threadbare recital of the claim's elements). The Court therefore dismisses Sears Holdings as a defendant. Defendants seek a with-prejudice dismissal. Because plaintiffs do not seek leave to amend in the event of Sears Holdings' dismissal, and plaintiff were previously given the opportunity to replead claims against Sears Holdings and still have failed to do so, the dismissal is with prejudice. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (leave to amend need not be granted when a party has had multiple opportunities to amend but failed to cure a defective claim).

### 3. Count III (Illinois Consumer Fraud Act)

As the Court set out in its previous opinion and order, the Seventh Circuit has said that a nonresident plaintiff may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005)). The Court dismissed plaintiffs' ICFA claim, noting that it was alleged or reasonable to infer from the allegations that although Sears is in Illinois, plaintiffs live in Pennsylvania; they entered into the agreements with Sears and thus were allegedly deceived in Pennsylvania; they called from Pennsylvania to request service on their treadmill; they were in Pennsylvania when they learned that their products were not covered by the agreements; and the appliances that were the subject of the agreements are in Pennsylvania. (ECF No. 48, Mem. Op. & Order at 6.) Because the allegations suggested that most of the circumstances underlying the alleged fraud occurred in Pennsylvania, the Court concluded that plaintiffs do not have statutory standing to sue under the ICFA.

In the First Amended Complaint, plaintiffs add allegations about general operations and procedures concerning service agreements, which take place at Sears's headquarters in Illinois. Much of the alleged conduct (such as the handling of claims under the agreements and the maintenance of databases used to input customer claims) has nothing to do with the allegedly deceptive conduct, and the remaining alleged conduct is not specific to plaintiffs; as defendants point out, none of plaintiffs' new allegations address the circumstances under which plaintiffs purchased their service agreements or when they learned that their purchases were not covered. The new allegations at most support an inference that the alleged deceptive course of conduct emanated from Illinois, but that is insufficient to support an ICFA claim. *See Avery*, 835 N.E.2d

at 855 (no ICFA claim where the only connection with Illinois is the defendants' headquarters or the fact that a scheme "emanated" from Illinois). Plaintiffs' allegations still suggest that most of the circumstances underlying the alleged fraud occurred in Pennsylvania, so plaintiffs do not have standing to sue under the ICFA. The dismissal of plaintiffs' ICFA claim will be with prejudice, for the same reasons the dismissal of Sears Holdings Corporation is with prejudice.

    **4.    Count IV (Pennsylvania Consumer Protection Law)**

Defendants contend that plaintiffs also have failed to state a claim under the PCPL, for two reasons. The first, say defendants, is that plaintiffs do not allege that they justifiably relied on defendants' wrongful conduct and suffered harm as a result of that reliance. The parties disagree on whether Pennsylvania law requires plaintiffs to plead (or even prove) justifiable reliance when asserting a PCPL claim under the statute's "catch-all" provision. The Court will assume for purposes of the instant motion that the plaintiffs are so required. According to defendants, plaintiffs fail to allege that Sears's deceptive acts induced plaintiffs to purchase service agreements, to their detriment.

Plaintiffs respond that they have pleaded justifiable reliance because the only reasonable inference to draw from their allegations is that they purchased the service agreements based on the belief, caused by Sears's misrepresentations and omissions, that the agreements actually provided coverage for the products they had purchased. The Court agrees. Justifiable reliance requires considering, among other things, the circumstances surrounding the transaction at issue. *See, e.g.*, *Behr v. Fed. Home Loan Mortg. Corp.*, No. 1:14-cv-291, 2015 WL 5123656, at *7 (W.D. Pa. July 29, 2015). Here we do not have a situation, as in some cases, where the nature of the subject transaction and alleged deception permit alternative inferences as to whether a plaintiff relied on the deception in entering into the transaction. As plaintiffs correctly note, the

only competing inference—that plaintiffs entered into the agreements without regard for whether they actually covered their products—is implausible. The Court concludes that plaintiffs have pleaded facts sufficient to allege justifiable reliance.

Defendants also argue that plaintiffs' PCPL claim is barred by the economic-loss doctrine, which prohibits plaintiffs from recovering in tort certain economic losses. Whether the doctrine applies to PCPL claims "has been the subject of much dispute in Pennsylvania." *Murphy v. State Farm Mut. Auto. Ins. Co.*, No. 16-2922, 2016 WL 4917597, at *5 (E.D. Pa. Sept. 15, 2016). The parties' briefs reflect this dispute, which the *Murphy* court explained as follows:

> While . . . the Pennsylvania Supreme Court has yet to rule on whether the economic loss doctrine bars intentional fraud and deceptive practices claims stemming from a statute such as the UTPCPL, the Third Circuit has predicted that the Pennsylvania Supreme Court would hold that UTPCPL claims are barred by the economic loss doctrine. *Werwinski* [*v. Ford Motor Co.*], 286 F.3d [661,] 680-81 [(3d Cir. 2002)]. After *Werwinski*, the Pennsylvania Superior Court held in *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013), that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence.

*Murphy*, 2016 WL 4917597, at *5. As noted in *Murphy*, while some courts have concluded that *Werwinski* "no longer holds vitality after *Knight*," others, such as the *Murphy* court, have continued to follow *Werwinski* on the ground that it is binding on district courts in the Third Circuit until the Pennsylvania Supreme Court or the Third Circuit rules otherwise. *See id.*

*Werwinski* is not binding on this Court, and in the absence of guiding decisions from the Pennsylvania Supreme Court, the Seventh Circuit instructs us to "consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). Because defendants do not persuade this Court that there is a

6

convincing reason that the Pennsylvania Supreme Court would disagree with the Pennsylvania Superior Court's conclusion in *Knight*, the Court will follow *Knight*. Although defendants are correct in stating that when faced with two opposing and equally plausible interpretations of state law, this court should generally choose a narrower interpretation that restricts liability, *see Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000), it is this Court's view that *Knight* is the more plausible interpretation in light of the evolution of Pennsylvania law since *Werwinski* was decided, *see Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429 (E.D. Pa. 2015). Defendants' motion to dismiss plaintiffs' PCPL claim is therefore denied.

**B.     Objections to Judge Mason's Rulings**

Plaintiffs timely filed objections to Magistrate Judge Mason's Order of October 28, 2016 [115], in which Judge Mason granted in part and denied in part plaintiffs' motions to compel production of certain discovery [110] and to extend discovery deadlines [109].

Where, as here, a district court considers timely objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's rulings will be modified or set aside only if they are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); see also *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014). Under the clear-error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

Plaintiffs challenge three aspects of Judge Mason's order.[1] The first is the denial of plaintiffs' motion to reopen fact discovery for a ninety-day period following the filing of an

---

[1] Because oral argument would not help the Court in ruling on plaintiffs' objections, plaintiffs' request for oral argument is denied.

answer. Judge Mason concluded that plaintiffs' motion to reopen fact discovery was untimely and unsupported by law. Plaintiffs first argue, unpersuasively, that they experienced "confusion" about whether fact discovery was closed on June 10, 2016. To support that proposition, they oddly rely on an order that Judge Mason entered a month later in which he indeed affirmed that he did not find it necessary to "*re-open*" fact discovery. (ECF No. 91 (emphasis added).) The Court agrees with Judge Mason that it was clear that the statements he made with respect to remaining discovery matters after the close of discovery were with respect to outstanding discovery matters only. Plaintiffs also assert that they were diligent in pursuing discovery and defendants have refused to engage in discovery in good faith. But even if those general arguments had merit, which the record does not bear out, they provide no justification for why plaintiffs did not move to reopen fact discovery until three months after it had been closed. Furthermore, plaintiffs' contention that Judge Mason "myopically focus[ed] on purported deficiencies in Plaintiffs' discovery requests and the manner in which Plaintiffs attempted to bring them to the Court's attention, with little regard for the substantive interests at stake," (Pls.' Objections at 6), is utterly without merit. It is plaintiffs' job, not that of the courts, to craft their own discovery requests and arguments on motions, and to bring those requests and motions in a timely manner. Plaintiffs assert that Judge Mason's ruling was "rendered in a vacuum," (*id.*), but it appears that it is plaintiffs who would have the Court ignore their actions, or lack thereof, during the discovery process. Plaintiffs also contend that as a matter of law, it is improper to close discovery prior to the filing of an answer, but they cite no authority for that proposition, and it is rejected. In any event, this Court concurs with Judge Mason, who denied plaintiffs' motion without prejudice and acknowledged the possibility that defendants might raise affirmative defenses that could warrant reopened discovery.

Plaintiffs' second objection is to the denial of their request to compel defendants to produce computer database information regarding aftermarket service agreements sold on or after March 25, 2000. In their objections, plaintiffs refer to Judge Mason's ruling as a "denial of Plaintiffs' request that Sears take the simple step of exporting the data in its computerized [service agreement] database in response to Plaintiffs' request for all documents concerning instances where [a service agreement] was issue[d] for a non-covered product." (*Id.* at 10.) As defendants point out, this characterization of the ruling does not correspond with the relief plaintiffs sought from Judge Mason; aftermarket service agreements are not the same as service agreements for non-covered products. Plaintiffs have failed to convince this Court that Judge Mason clearly erred in denying plaintiffs the specific discovery that they sought in their motion to compel.

Plaintiffs' third and final objection is to the "limitation of discovery based on the statute of limitations." (*Id.* at 12.) In May 2016, near the end of the fact-discovery period, Judge Mason determined that discovery dating back to March 25, 2010 was "reasonable and proportional to the needs of the Greenes' case at this time." (ECF No. 72, Order at 5.) Plaintiffs then repeatedly asked Judge Mason to reconsider that determination. This Court agrees with Judge Mason that plaintiffs have provided no compelling argument that discovery going back earlier than March 25, 2010 is warranted. Plaintiffs' arguments are cursory. For example, they concede that they have "proceeded on the assumption that" Pennsylvania's four-year statute of limitations applies to their contract claim, but argue that "a strong case can be made that it is Illinois' ten-year statute that actually applies." (Pls.' Objections at 15.) But they fail to develop that argument or their other arguments regarding the temporal scope of discovery.

9

**CONCLUSION**

Defendants' motion to dismiss in part the First Amended Class Action Complaint [54] is granted as to defendant Sears Holdings Corporation, which is dismissed with prejudice as a defendant in this suit, and Count III, plaintiffs' ICFA claim, which is dismissed with prejudice. Defendants' motion is denied as to Count IV, plaintiffs' PCPL claim. The remaining defendants shall answer the remaining claims by April 17, 2017. The Court overrules plaintiffs' objections [116] to Magistrate Judge Mason's order of October 28, 2016. A status hearing is set for April 19, 2017 at 9:30 a.m.

**SO ORDERED.**                                                              **ENTERED:   March 27, 2017**

_____
**JORGE L. ALONSO**
**United States District Judge**