IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NINA GREENE and GERALD GREENE, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 15-cv-02546 ) |
| SEARS PROTECTION COMPANY, SEARS, ROEBUCK AND CO., and SEARS HOLDINGS CORPORATION, | ) Judge Jorge L. Alonso ) ) Magistrate Judge Michael T. Mason ) |
| Defendants. | ) ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE PURPORTED EXPERT OPINIONS OF CHRISTOPHER JACKMAN**

Plaintiffs hired Christopher Jackman to prepare a report to articulate how damages might be computed on a class-wide basis for the putative classes urged by Plaintiffs. Dkt. 142-20. Jackman's opinions, however, are based on unreliable assumptions and as such are speculation. Because they rest upon unreliable assumptions, Jackman's opinions should be rejected under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

In particular, Jackman's opinions about the supposed damages for breach of contract sought in this case rest upon the demonstrably false assumption that any product shown on a then current "Eligible Brands List" would not be repaired or replaced by sears when service was requested by the master protection agreement customer. Jackman's opinions hinge on a second false assumption that Sears has records showing which products were on the Eligible Brands List and records showing which customers were denied service for those products dating back to 2000. After controlling for his reliance on these false assumptions, Jackman's opinions that supposed damages for breach of contract are provable on a class-wide basis collapses.

Because they are completely unreliable, Jackman's opinions should be excluded.

**ARGUMENT**

I.  **Legal Standard For Admissible Expert Opinion Testimony.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Marting v. Crawford & Co.*, No. 00 C 7132, 2004 WL 305724, at *2 (N.D. Ill. Jan. 9, 2004). Pursuant to the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 591 (1993), an expert's testimony must be reliable and must assist the trier of fact in understanding evidence or in determining a fact at issue. *See Securities Exchange Comm. v. Lipson*, 46 F. Supp. 2d 758, 762 (N.D. Ill. 1998). This two-prong standard is applied to all expert testimony regardless of whether it is scientific, technical, or specialized in nature. *See Ammons v. Aramark Uniform Serv., Inc.*, No. 01 C 4073, 2002 WL 31748837, at *1 (N.D. Ill. Dec. 6, 2002) (*citing Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

In assessing the reliability of an expert's testimony, the Court must consider whether the principles and methodology underlying an expert's testimony are valid. *See Lipson,* 46 F. Supp. 2d at 762; *Clark v. Takata Corp.,* 192 F. 3d 750, 756 (7th Cir. 1999) (under Fed. R. Evid. 702, the district judge must function as a 'gatekeeper' by screening expert testimony). Parties have the burden to prove that the proposed testimony of their experts meets these requirements. *Denton v. N.E. Ill. Reg'l Commuter R.R. Corp.,* No. 02 C 2220, 2006 WL 2385298, at *5 (N.D. Ill. Aug. 17, 2006); *Ammons*, 2002 WL 31748837, at *1.

II.  **Jackman's Assumption That Sears Did Not Repair Or Replace Products That Were Not On The Eligible Brands List Has No Evidence To Support It.**

Jackman proposes a methodology for determining damages for products which Sears allegedly did not intend to cover. Dkt. 142-20, ¶ 4. To create a dataset of MPAs from which to calculate damages, Jackman proposes starting with Sears' data on all MPAs since 2000, which he understands Sears maintains in its data warehouse. Christopher Jackman Dep., p. 43:2-7; 44:23-

45:14, attached hereto as Exhibit 1; Dkt. 142-20, ¶¶ 11, 17, 25-26. The MPA dataset would then be filtered to remove MPAs sold on products that were *on* the Eligible Brands List at the time of purchase. Dkt. 142-20, ¶ 26; Ex. 1, pp. 44:11-17, 48:3-16. The remaining MPAs in the dataset would be those Sears sold on products not on the Eligible Brands List at the time of purchase. Dkt. 142-20, ¶¶ 19, 26-28; Ex. 1, p. 49:10-17.

To differentiate for each cause of action, the methodology proposes applying the statute of limitations identified by Plaintiffs' counsel for each claim. Ex. 1, pp. 43:21-44:18. The breach of contract class in the dataset would include all MPAs with start dates going back to March 25, 2000 (Dkt. 142-20, ¶ 25), the unjust enrichment class in the dataset would include all MPAs with start dates going back only to March 25, 2005 (Dkt. 142-20, ¶ 31), and the Pennsylvania consumer protection statute class in the dataset would include all MPAs with start dates going back to March 25, 2004, and be limited to Pennsylvania residents. Dkt. 142-20, ¶ 34.

### A. Contrary to Jackman's Assumption, Sears Does Not Maintain Eligible Brands Lists With Effective Dates Going Back To 2000.

Jackman assumes Sears' Eligible Brand Lists date back to 2000 and that the effective dates for each list can be reliably determined. Jackman cites to the testimony of Dainon Setzer, Sears' National Operations Manager – Service Contracts, that the lists have been used since 1996, are "still currently in use," have been revised when brands are added or removed, and that the lists "are saved somewhere." Dkt. 142-20, ¶ 18; Ex. 1, p. 62:5-7. Mr. Setzer identified that he is able to determine revision dates "going back to probably at least 2010," but he specifically did *not* testify regarding pre-2010 Eligible Brands Lists. Ex. 1, p. 63:2-8; Dainon Setzer Dep., Dec. 17, 2015, p. 156:2-3, attached hereto as Exhibit 2. In fact, Mr. Setzer testified that he did not know if the "most current version [of the Eligible Brands List] will be saved online" or will even show a revision date when printed. *Id.*, 155:7-14. Confronted with this testimony at his deposition, Jackman was forced to

3

concede, as he must, that he does not know whether Sears maintains Eligible Brands Lists dating back to 2000. Ex.1, p. 63:2-8.

After his deposition, Mr. Setzer conducted a further search of Sears' files and confirmed that Sears does ***not*** have all prior versions of the Eligible Brands List going back to 2000, or even 2010. Decl. of Dainon Setzer, ¶ 7, attached hereto as Exhibit 3. Moreover, for the versions it does have, Sears is not able to determine the effective dates for each Eligible Brands List. *Id.* Jackman's methodology could only then rely on Eligible Brands Lists produced in this litigation that had revision dates—and ***assume*** without any evidence that there were no changes from the prior version of the list. Ex. 1, p. 66:7-17. But this assumption is unreliable because Sears' Eligible Brands List is continually updated. *See* Ex. 2, p. 154:9-12 ("Q. How often is [the Eligible Brands List] updated? A. Completely as brands come and go in coordination with product engineers and repair services."). Mr. Setzer further explained market reasons for the continual updates to Sears' product lists: "[W]e've exited the market on new contracts for certain merchandise . . . [for] a variety of factors including the value of the product in the marketplace . . . sometimes the manufacturer has gone out of business . . . maybe it's just not a profitable venture for us anymore." *Id.*, p. 208:19-209:22.

Alternatively, Jackman proposed using information contained in MMI, a software program used by Sears when selling MPAs which lists the brands that match those on the current Eligible Brands List, to recreate the Eligible Brands List for the period when Sears used MMI—March 2009 to present. Dkt. 142-20, ¶ 18, n. 38; Ex. 2, p. 153:1-3. Sears, however, does not maintain historical eligible brand and product data in MMI. Thus, MMI cannot be used to determine whether a given product was on Sears' Eligible Brands List at any prior given point in time. Ex. 3, ¶ 8; Ex. 2, p. 154:21-155:14. Because the data does not exist to recreate accurate snapshots of Sears' historical Eligible Brands Lists, Jackman's assumption that he could rely on such historical lists is false and

his opinions, therefore, are unreliabile. *See Denton*, No. 02 C 2220, 2006 WL 2385298 at * 6 (expert's conclusions undermined by absence of specific information about injurious substance and level and extent of exposure to plaintiff claiming mold contamination); *see also Clark*, 192 F.3d at 759 ("[T]rial court was well within its discretion to rule out [expert's] opinion, which was connected to existing data only by the *ipse dixit*, or bare assertion, of the expert."). Jackman's report and testimony are based on presumptions about data never proven to exist, which cannot assist the trier of fact, and should be excluded. *Ammons*, No. 01 C 4073, 2002 WL 31748837, at *3 ("As conjecture and speculation, the expert's opinions are inadmissible.").

      **B.**     **Even If The Eligible Brands List Were Historically Complete, It Cannot Be Used To Determine Which Products Sears Intended To Repair or Replace.**

Jackman also assumes that the breach of contract occurred at the time the MPA was purchased. Ex. 1, p. 52:14-19. Jackman states that he does not have an opinion as to how Sears breached the MPA, was unjustly enriched, or made a misrepresentation to MPA holders to violate the UTPCPL (*id.*, pp. 52:20-53:9), but he understands "coverage" to mean the terms stated on the MPA certificate. Ex. 1, p. 71:18-21.

In fact, the MPA certificate states that Sears has ***discretion*** to decide if a product can be repaired or replaced, and Sears reserves the right to inspect a product listed on an MPA to determine eligibility. *See* Dkt. 51-1, p. 15, ¶¶ 1-2, 6 ("We will directly pay on your behalf for the cost of parts and services performed by a qualified repair provider that we shall designate . . . necessary to maintain the proper operating condition for the product(s) listed on the reverse side;" "Products . . . may be repaired or replaced with a comparable product;" "If we determine that a covered product is unrepairable . . . you are entitled at your option to a comparable product replacement, or credit of comparable value determined by us or we will cancel this MPA and refund the Total Price;" "We

5

reserve the right to inspect the product(s) listed on the reverse side to determine eligibility for coverage.").

Jackman assumes Sears only provides service coverage for MPAs capturing products listed on Sears' Eligible Brands List at the time of purchase. Dkt. 142-20, ¶¶ 25-26; Ex. 1, pp. 49:10-17, 52:14-19, 103:22-104:7. That assumption also is false. In fact, the Eligible Brands List does not provide the complete scope of services to be performed under the MPA. Rather, the Eligible Brands List is merely Sears' internal reference used for selling MPAs. Ex. 3, ¶ 5 ("the Eligible Brands List, <u>cannot</u> be used to determine which products Sears allegedly did and did not intend to repair or replace. The Eligible Brands List is *not* used by Sears to determine if a given product is eligible for repair or replacement.") (emphasis added). Jackman's assumption therefore, that the Eligible Brands List is determinative for actual services, has no basis. Because he relies on Eligible Brands List, Jackman's opinions improperly include MPA holders in the dataset who received product repairs, replacement, refund, and buyout offers—people who have suffered absolutely no injury or damagaes. Jackman has no method for parsing among putative class members who never requested service or who always got the service they requested. Ex. 1, p., 73:7-18. Because there is no way to ensure that damages go only to injured class members, the Court could not even rely on Jackman's damages conclusions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1053 (2016) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited "to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm. [] Therefore, if there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand.").

Jackman himself admits he did not take into consideration MPA holders who received repairs on products not included on the Eligible Brands List at the time of purchase. Ex. 1, p., 73:18-

6

20 (Jackman's analysis "doesn't contemplate look at…any of the service calls that were made or anything like that."); *see also id.* at pp., 97:6-15, 100:10-17; 101:10-17. Indeed, Jackman ignored the uncontradicted testimony of Katrina Means, Sears' Director of Service Contracts, who made clear that "Any item that is listed on the [MPA certificate] terms and conditions is a covered product." Katrina Means Dep., p. 92:11-15, attached as Exhibit 4; *see also id.* at, p. 93:8-22 ("You don't — you may use some internal — something internally when you're determining eligibility of coverage, but once it's sold, this is the contract the customer has, and this is what is gone by."). Although he claims he read Ms. Means' deposition transcript, Jackman could not recall this testimony. Ex.1, p. 97:16-22; Dkt. 142-20, Ex. B. Jackman also did not account for the value of the repairs or annual maintenance checks to those MPA holders who received more in service than they paid for their MPA. Ex.1, p. 101:4-17; *see* Dkt. 51-1, p. 15 ¶ 3 ("[Sears] will directly pay Sears Repair to perform one (1) preventive maintenance check-up."). Consequently, Jackman's opinions would wrongly include MPA holders without injury or damages and would, therefore, receive a windfall under his theory. Jackman also fails to factor in MPA holders like the named plaintiffs here who received offers for replacement credits, buyouts, or refunds that were not accepted. Ex. 1, p. 95:18-23.

Because Jackman's methodology assumes "coverage" based on whether a product was on the Eligible Brands List at the time the MPA was purchased, it is not accurate or reliable for measuring *performance* of the terms of an MPA. The Seventh Circuit has rejected subjective testimony holding that an expert who "supplies nothing more than a *bottom line* supplies nothing of value to the judicial process." *Minasian v. Standard Chartered Bank, PLC,* 109 F. 3d 1212, 1216 (7th Cir. 1997) (emphasis added) (holding that expert opinion only has significance proportioned to the sources that sustain it); *Schiller & Schmidt, Inc., v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) ("[P]eople

7

who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence.").

Not only does the Jackman Report ignore contrary facts, such as the repairs, it lacks evidence to support its theory, relying on unwarranted, demonstrably false assumptions, as set forth above. *See Lipson,* 46 F. Supp. 2d at 764 ("[E]xpert opinion that is carefully tailored to support a position is not reliable."); *Marting,* 00 C 7132, 2004 WL 305724, at *3 (striking expert report with insufficient underlying analysis of facts); *Denton*, No. 02 C 2220, 2006 WL 2385298 at * 5 ("fact that the information was not included in the initial history upon which he based his opinions casts doubt on the completeness of the data underlying the opinions").

Because of its fundamental flaws, Jackman's opinions will not assist the trier of fact. *See Clark*, 192 F.3d at 759 ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."); *Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997) (expert testimony properly excluded where expert did not know specific information regarding bromide exposure to assist the trier of fact); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.,* 427 F. Supp. 2d 1022, 1031 (D. Kan. 2006) ("Any probative value of [expert] opinion on damages is substantially outweighed by the danger of misleading the jury and unfair prejudice resulting from his unsupported assumptions and failure to consider other circumstances.").

**III. There Are No Records Which Identify MPA Customers Who Received No Value For Products Not On The Eligible Brands List, And Therefore It Is Pure Speculation To Claim Those Customers Suffered Damages.**

Sears does not track MPA holders who did not receive a needed repair on products not on the Eligible Brands List because its policy is ***always*** to repair a product or offer replacement or refund. *See* SEARS0008724, attached hereto as Exhibit 5 (March 31, 2014 email from Sears Product Manager Ashly Jobin to Tina Anthony, "Our process always has been to either service those products through [a third party repair] network and if unsuccessful, either provide a full comparable

8

replacement or a buyout."). Jackman did not even consider whether Sears maintained data (which it does not) on brands Sears allegedly would not repair if a customer called for a needed repair. *See* Ex. 1, p. 107:1-11 ("Q Did you ever ask to review an ineligible brands list? A No . . . I'm not aware of that; and I never asked to see it."). Jackman's assumption, therefore, that MPA customers with products not on the Eligible Brands List received no value is pure speculation. Jackman presumes a hypothetical set of MPA holders who needed repairs, a hypothetical subset of whom requested a needed repair, and yet another hypothetical sub-subset of whom did not receive the requested needed repair. Jackman identifies no basis for the existence of any of these hypothetical MPA holders. Accordingly, there is no way to quantify who, if anyone, was damaged based on MPAs purchased for products not on the Eligible Brands List. But even if such persons could be reliably identified – and they cannot – Jackman ignores that it is Sears policy to offer such persons a replacement or refund, which means those persons would not have suffered any injury or damage.

Because of his reliance on these further unwarranted assumptions that data exists showing customers who did not receive repairs and because he ignores Sears' policy to offer replacement or refund, Jackman's opinions are unreliable. *Ammons*, No. 01 C 4073, 2002 WL 31748837, at *3 ("As conjecture and speculation, the expert's opinions are inadmissible."); *see Goodwin v. MTD Prod., Inc.,* 232 F.3d 600, 609 (7th Cir.2000) (expert's proffered testimony not admissible because it was based on speculation); *Cummins v. Lyle Indus.,* 93 F.3d 362, 368 (7th Cir. 1996) (an expert's opinion must be based on definite methods and procedures, not on subjective beliefs or unsupported speculation); *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir. 1989) (court must look behind an expert's ultimate conclusion and analyze the adequacy of its foundation—expert's declaration that is full of assertions but empty of facts and reason is insufficient to create any issue of fact on summary judgment).

**CONCLUSION**

Defendants Sears Protection Company and Sears Roebuck and Co., respectfully request this Court to exclude Christopher Jackman's unreliable purported expert opinions.

Dated: October 27, 2017

Respectfully Submitted,

By: /s/ Erin Bolan Hines
One of Defendants' Attorneys

Craig M. White (*cwhite@bakerlaw.com*)
Erin Bolan Hines (*ehines@bakerlaw.com*)
Josephine Tung (*jtung@bakerlaw.com*)
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she caused a copy of the attached **Defendants' Memorandum Of Law In Support Of Motion To Exclude The Purported Expert Opinions Of Christopher Jackman** to be filed electronically on October 27, 2017. Notice of this filing will be sent to all parties registered on this Court's ECF system by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Erin Bolan Hines