IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NINA GREENE AND GERALD GREENE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | No. 15 CV 2546 |
| ) | |
| v. ) | Judge Jorge Alonso |
| ) | |
| ) | Magistrate Judge Michael T. Mason |
| **SEARS PROTECTION COMPANY, SEARS,** ) | |
| **ROEBUCK AND CO., and SEARS HOLDINGS** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

**To:** The Honorable Jorge Alonso
United States District Judge

## REPORT AND RECOMMENDATION

Michael T. Mason, United States Magistrate Judge:

Currently pending before the Court are defendants' motion to exclude the purported expert opinions of Christopher Jackman [156] and plaintiffs' motion to exclude the purported expert opinions of Mark J. Hosfield [177]. The following is the Court's recommendation for rulings on the opposing motions to strike expert testimony.

## Background

Plaintiffs, Nina Greene and Gerald Greene (the "Greenes" or "plaintiffs"), filed this class action lawsuit against defendants Sears Protective Company, Sears Roebuck and Co., and Sears Holdings Corporation (collectively, "Sears" or "defendants") for breach of contract, unjust enrichment, and violation of Pennsylvania's unfair trade practices and consumer protection law. The Greenes allege that Sears sold them, and others similarly situated, consumer Master Protection Agreements ("MPAs") to service a variety of appliances that they purchased. The Greenes further allege that when they asked Sears to service the appliances, Sears informed them that the services were not covered. The Greenes also claim that Sears engaged in a deceptive practice by misrepresenting to customers that the MPAs they purchased covered service for the products when they did not. It is plaintiffs' position that their argument is supported, in part, by the Eligible Brands List ("List"), which identifies products covered under the MPAs.

On July 28, 2017, plaintiffs filed a motion to certify the class. (Dkt. 141.) Included with the motion was the expert report of Christopher Jackman ("Jackman"). Defendants filed a motion to exclude the purported expert opinions of Jackman on October 27, 2017, and enclosed their own expert report from Mark Hosfield ("Hosfield"). (Dkt. 156.) Plaintiffs subsequently filed their own motion to exclude the purported expert opinions of Hosfield. (Dkt. 177.) The Court will address both motions to exclude experts in this Report and Recommendation.[1]

**Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the principles discussed in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). *Smith v. Ford Motor Co.,* 215 F.3d 713, 717-18 (7th Cir. 2000). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

According to the Supreme Court's interpretation in *Daubert*, Rule 702 means that expert testimony must be (1) "ground[ed] in the methods and procedures of science[,]" and (2) must "assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 590-91. In other words, Rule 702 requires that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Smith,* 215 F.3d at 718 (quoting *Daubert*, 509 U.S. at 589). The party who seeks to introduce the expert witness testimony bears the burden of demonstrating that the proposed testimony satisfies the *Daubert* standard. *Kirk v. Exxon Mobil Corp.*, 870 F.3d 699 (7th Cir. 2017). "The rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, Advisory Comm. Notes (2000).

With respect to the reliability of proposed expert testimony, courts first determine whether a witness is qualified in the relevant field and then examine the methodology that the expert has utilized to reach his conclusions. *Smith*, 215 F.3d at 718. Importantly, courts have a gatekeeping function to focus on an examination of the expert's methodology; the validity of the analysis and correctness of conclusions are factual matters to be determined by the trier of fact. *Id.* (citing *Daubert*, 509 U.S. at 595). Courts analyze the relevance of the proposed testimony and whether the testimony will assist the trier of fact with its analysis of the issues involved in the case. *Smith*, 215 F.3d at 718.

Importantly, a finding that one expert's testimony is reliable does not necessarily render contradictory expert testimony unreliable because "[t]he amendment is broad

---

[1] Plaintiffs' renewed motion for class certification [141] will be addressed in a separate Report and Recommendation.

enough to permit testimony that is the product of competing principles or methods in the same field of expertise." Fed. R. Evid. 702, Advisory Comm. Notes (2000) (citing *Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 160 (3rd Cir. 1999)).

**Defendants' Motion to Exclude Christopher Jackman's Purported Expert Opinions [156]**

### I. Argument

Defendants filed a motion to exclude the testimony of Christopher Jackman, who opines on how damages may be calculated on a class-wide basis. In their motion [156], defendants raise numerous arguments to assert that the opinions are unreliable assumptions that constitute speculation. Specifically, defendants contend that Jackman rests his damages calculation on the improper assumption that any product not shown on the List would not be repaired or replaced by Sears if service was requested under the MPA. Further, defendants assert that Jackman's opinions hinge on the false assumption that Sears has records establishing which products were on the List as well as records showing which customers were denied service for the products dating back to 2000. According to defendants, Sears does not have all prior versions of the List going back to 2000 nor is it able to determine the effective dates for each List.

In plaintiffs' response [175], they contend that Jackman offers a standard and reliable methodology that allows him to utilize data possessed by Sears in order to measure damages. It is plaintiffs' position that defendants' motion is not a proper *Daubert* motion, but instead an attempt to have the Court rule on the merits of the lawsuit. Notably, plaintiffs argue that the "bedrock" of defendants' argument is an accumulation of contested issues of material fact. Plaintiffs further counter that alternative data is available in the event certain data is found to be unreliable.

Defendants reply [176] to plaintiffs' response and assert that plaintiffs fail to distinguish between scrutinizing factual disputes and determining the reliability of an expert's opinion. Defendants maintain that Jackman's opinions lack a reliable foundation and hinge upon false assumptions about data that has never been proven to exist; and as such, his testimony cannot assist the trier of fact.

### II. Analysis

The parties do not dispute Jackman's qualifications in his respective field; therefore the Court first turns to the methodology employed by Jackman. The methodology for each proposed class is addressed in detail in Jackman's report as well as in plaintiffs' response to defendants' motion. (Resp. at 6-7.) In short, according to plaintiffs, Jackman developed a method that would allow him to identify products in an MPA dataset ("Master BOC MPA Dataset") that were included as part of an aftermarket MPA sold by Sears but were not eligible for coverage under the MPA. In order to determine damages, Jackman would establish whether defendants issued refunds or authorization credits for the products in the Master BOC MPA Dataset and then subtract the amount

3

refunded or credited from the MPA prices paid by customers for those products.  The differences across all the products in the Master BOC MPA Dataset would then be summarized to yield damages suffered by members of the proposed class.  The methodology proposes applying the statute of limitations that is identified by plaintiffs' counsel for each claim.[2]

### a. Reliability

Defendants argue that Jackman merely speculates that MPA customers with products not on the List did not receive value, when in fact it was their policy to always repair a product or offer a refund on MPAs.  Defendants further contend that there is no way to ensure that damages go to injured class members because Jackman's method does not account for those who did not request service or those who received the requested services.  According to defendants, Jackman's opinions improperly include MPA holders who received repairs, replacements, or refunds and consequently suffered no injury or damages.  Therefore, defendants maintain that Jackman's methodology is based on speculation, does not reliably measure the actual performance of the terms of an MPA, and should be excluded.  *See Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (internal citations omitted) (An expert's opinion must be based on definite methods and procedures and not on subjected beliefs or unsupported speculation.); *Goodwin v. MTD Prod., Inc.,* 232 F.3d 600, 608 (7th Cir. 2000) (Expert's proffered testimony was not admissible because it was based on speculation.).

Plaintiffs contend that Jackman performed an extensive review of materials, produced by Sears, in order to craft a reliable and reasonable methodology to measure damages suffered by members of the proposed classes for breach of contract, unjust enrichment, and Pennsylvania consumer fraud during the relevant periods.  Jackman analyzed the data that was spread out over various databases, as well as defendants' discovery and deposition testimony, and he determined which information could be applied to his methodology on a class-wide basis.  Accordingly, it is plaintiffs' position that Jackman's methodology is sound and firmly rooted in information that was provided by defendants.

Plaintiffs further opine that the questions raised by defendants relating to the bases and sources of Jackman's opinions should only affect the weight assigned to the opinion and not its admissibility.  *See Loeffel Steel Products, Inc. v. Delta Brands, Inc.,* 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005).  According to plaintiffs, numerous issues presented by defendants relate to contested issues of material fact that are not to be determined at this stage.  *See Smith*, 215 F.3d at 718; *see also Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 587 (7th Cir. 2000) (In addressing whether expert testimony is reliable, courts should not consider the "factual underpinnings" of the testimony, but whether the expert appropriately relied "on the test that he administered and upon the sources of information which he employed.").  Specifically, there is a dispute as to

---

[2] The breach of contract class goes back to March 25, 2000.  The unjust enrichment class goes back to March 25, 2005.  The Pennsylvania consumer protection statute class is limited to Pennsylvania residents and goes back to March 25, 2004.

whether Sears maintained the List dating back to 2000 as well as whether Jackman properly accounted for class members who received performance under the MPAs in the form of repairs. Plaintiffs acknowledge that Jackman's methodology does not account for repairs under the MPAs because it is their position that repairs are not relevant to their allegations; however, they go on to say that based on the believed existence of service records, they would be able to incorporate repairs into the methodology if necessary.

Defendants contend that Jackman should not have relied upon the test he administered and the sources of information that he employed because their policy was to always provide service coverage and because the List is not historically complete. It is their opinion that they do not raise disputed factual issues for the Court to assess, but that they merely present facts to demonstrate that the methodology lacks foundation. According to defendants, the Court can find that Jackman is speculating without making a factual determination.

Although Sears maintains that there are uncontested facts supported by evidence, plaintiffs have their own positions regarding what the evidence reveals and how much to credit the sources. Plaintiffs address defendants' arguments with factual assertions of their own and also discuss why multiple databases and documents were utilized to prepare a dataset for comparison as well as what the damages analysis should compare in order to address their theory of liability. Given the record before us, we disagree with defendants' position that their arguments go to the reliability of the methodology and not issues of material fact.

It is not the Court's role to make a finding of fact at this stage. *See Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on the analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."); *Walker v. Soo Line R.R. Co.,* 208 F.3d at 587. The ultimate correctness of the conclusions is not to be examined under *Daubert*. *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). Plaintiffs' purported reliance on the List is an issue for defendants to raise at trial or in summary judgment, and it is not to be adjudicated in this Report and Recommendation. Instead, we find that plaintiffs present a reliable methodology based on their particular factual interpretations. Defendants are free to raise arguments to discount those factual interpretations at the appropriate time in order to test the validity of the damages. *See Loeffel Steel Products, Inc.,* 372 F. Supp. 2d at 1110.

With respect to defendants' argument that there is no way to ensure that damages go to injured class members because Jackman's method does not account for those who did not request service or those who received certain performance under the MPA, Jackman's method includes determining whether defendants issued refunds or authorization credits for the products in the Master BOC MPA Dataset. According to plaintiffs, Jackman would subtract the amount refunded or credited from the MPA prices paid by customers for those products in his damages calculation. Further, it is plaintiffs'

5

theory of liability that the actual sale of the MPAs for non-covered items is the issue, not whether service was requested.

There does, nonetheless, appear to be a dispute as to the inclusion of repairs in the damages calculation. Defendants contend that even if plaintiffs decide to include repairs, there are no maintained records of MPA holders who did not receive repairs because that was never the case. It is, however, plaintiffs' discretion to not include repairs in their methodology and to be prepared to address whether that affects the validity of their conclusions at the appropriate time. As it pertains to the reliability of a damages calculation, this Court need only determine whether the methodology is reliable for plaintiffs' purported damages. *See Schultz,* 721 F.3d at 431 (quoting *Daubert,* 509 U.S. at 595 ("The inquiry must 'focus… solely on principles and methodology, not on the conclusions they generate.' ")); *see also Heard v. Illinois Dept. of Corrections*, No. 06 CV 0644, 2012 WL 2524748, at *3 (N.D. Ill. June 29, 2012) ("The *Daubert* analysis of an expert witness's reliability rests on the expert's process rather than his conclusions."). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Schultz*, 721 F.3d at 431 (quoting *Daubert,* 509 U.S. at 596). Here, defendants' main arguments regarding reliability relate to factual debates and do not cause the Court to question the reliability of the methodology employed. Therefore, based on the record before the Court, we find Jackman's methodology meets the reliability requirements under *Daubert.*

### b. Relevancy

Defendants maintain that the List is merely their internal reference for selling MPAs and that it does not provide the complete scope of services that are to be performed under the MPAs. Therefore, it is their position that the methodology proposed by Jackman is not relevant, only offers a bottom line conclusion, and will not assist the trier of fact. *See Clark v. Takata Corp.,* 192 F.3d 750, 759 (7th Cir. 1999) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."); *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 804 (N.D. Ill. 2013) (Assessing whether an expert's proposed opinions will assist the trier of fact in determining a factual issue is essentially a relevance inquiry.). Plaintiffs opine that Jackman's methodology is directly relevant to their motion for class certification because it shows that a standard and reliable methodology can be used to calculate class-wide damages consistent with plaintiffs' proposed classes. As discussed above, a number of the arguments raised by defendants, while compelling, do relate to issues of material fact that are not to be determined at this stage. There do appear to be a few hurdles relating to the inclusion and validity of certain information, *i.e.*, the List and exclusion of repairs, but if the trier of fact finds that the evidence presented by plaintiffs is more persuasive and credible, then the methodology proposed by plaintiffs will aide in a damages calculation. Accordingly, we find that the methodology proposed by Jackman is reliable and relevant to the lawsuit. *See Smith*, 215 F.3d at 718 (If the

testimony "will assist the trier of fact with its analysis of any of the issues involved in the case,["] then the standard is met.).

### III. Recommendation

The Court is not here to determine whether plaintiffs have an accurate damages calculation based on the evidence, but whether the methodology for their proposed damages calculation meets the *Daubert* standards. What constitutes appropriate damages is not to be determined at this stage. Although defendants ask the Court to find that the facts underlying their argument are undisputed, it is simply not the case. The Court cannot ignore the conflicting arguments and find that plaintiffs' proposed expert testimony should be excluded. Therefore, it is this Court's recommendation that defendants' motion to exclude the testimony of Christopher Jackman [156] be denied.

## Plaintiffs' Motion to Exclude the Expert Testimony of Mark J. Hosfield [177]

### I. Argument

Mark J. Hosfield was retained to evaluate the availability of reliable methodology for calculating damages for plaintiffs' proposed class members as well as to offer an assessment of Jackman's expert report. In their memorandum in support of their motion to exclude Hosfield's testimony [178], plaintiffs argue that his report is "bereft of analysis, and chock-full of disputed facts and improper legal conclusions." (Plaintiffs' Memorandum ("Mem.") at 1.) According to plaintiffs, Hosfield fails to provide a scientifically reliable method that will assist the trier of fact. Plaintiffs further assert that Hosfield's report is in violation of Federal Rule of Civil Procedure 26 because it is incomplete. It is also plaintiffs' position that Hosfield improperly relies on certain reports and documents without independently verifying the information. Plaintiffs contend that Hosfield's report presents as a brief in support of summary judgment and contains legal conclusions and many of the disputed facts that defendants attempted to raise in their motion for leave to file a motion for summary judgment.

Defendants respond [184] to plaintiffs' motion and assert that Hosfield's opinions are in compliance with Rule 26 and fulfill the *Daubert* requirements. It is defendants' position that their expert has no obligation to adopt plaintiffs' allegedly unsupported claims and is instead rebutting Jackman's speculative opinions. Further, according to defendants, "because Hosfield properly explains his opinions with concrete information from the record that will help the jury, Hosfield's opinions also do not contain inadmissible legal conclusions." (Resp. at 1.)

In their reply [185], plaintiffs assert that defendants continue to confuse class certification with the merits of expert analysis and apply the wrong standards of law. Plaintiffs further maintain that defendants only confirm that Hosfield failed to perform any independent analysis of the underlying materials upon which he relied and that his opinions still amount to improper legal conclusions.

## II. Analysis

Hosfield's qualifications as an expert are not called into question by plaintiffs. Instead, plaintiffs take issue with the comprehensiveness of his expert report as well as the reliability and relevancy of his opinions. According to Hosfield's report, he has formed two opinions: (1) "The [p]laintiffs, the proposed class representatives, have not been economically damaged;" and (2) "The methodology for measuring damages for the 'Breach of Contract Class,' the 'Unjust Enrichment Class,' and the 'Consumer Fraud Class' proposed by Christopher Jackman in his expert report […] will not reliably measure damages suffered by the proposed class members." (Dkt. 162 ("Hosfield Report"), at 6.). The basis and reasoning for these opinions are then provided in greater detail and constitute a majority of plaintiffs' concerns over Hosfield's opinions.

### a. Completeness of Report Under Rule 26

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert report must contain, in part: "(a) a complete statement of all opinions the witness will express and the basis and reasons for them; … [and] (vi) a statement of the compensation to be paid for the study and testimony in this case." According to plaintiffs, Hosfield fails to include a complete statement of the basis and reasons for his opinions and further neglects to identify his compensation for his testimony by only providing a range of fees. Plaintiffs note that Hosfield's report states that he will further elaborate on his report as necessary during his testimony. However, they contend that an expert cannot wait until his deposition to fully disclose his opinions.

Defendants counter that Hosfield's report complies with Rule 26(a)(2)(B). They state that Hosfield's reference to elaborating on his opinions was with respect to being able to provide various ways to explain his opinions if asked. Further, when asked at his deposition, Hosfield confirmed that his rate is $650 an hour, which was the top of the range provided in his report. (Mem. at Ex. 1, 13:14-19.)

Based on the record before the Court, we do not find Hosfield's report to contain such indifference to Rule 26(a)(2)(B) that the report should be excluded on those grounds. Statements made in Hosfield's report regarding expanding on his opinions as necessary may be construed to mean only that the expert is able to offer more explanation if needed to create a better understanding of his opinions. His report does not merely contain a boilerplate opinion without further elaboration. Additionally, while Hosfield provides a range of compensation in his report for his project team, he does testify as to his actual fees. It also stands to reason that he, as the retained expert, would bill the high end of the project team's rate. Therefore, the Court does not find this to be reason for striking Hosfield's report.

### b. Reliability

According to plaintiffs, Hosfield's opinions are devoid of any reliable methodology and largely consist of unsupported statements. Plaintiffs also take issue with the

materials reviewed and relied upon by Hosfield and his alleged lack of independent verification of underlying information.

Defendants maintain that Hosfield's opinions are based upon facts in the record and that he is under no obligation to adopt plaintiffs' claims in developing his opinions. According to defendants, Hosfield is not providing causation testimony, but instead testimony "based on facts in the record regarding Sears['] MPA policies and practices and the experience of the Plaintiffs themselves whether damages can be calculated under Jackman's theory." (Resp. at 10.) Hosfield finds fault with Jackman's methodology, which is based on the theory that the purchase of the MPA for non-eligible products was the breach.[3] Based on what he reviewed, Hosfield has concluded that because performance was always rendered, there are no economic damages.

It bears noting that plaintiffs argue that Hosfield's analysis contains disputed facts, when they previously argued that it was proper for their own expert to base his own analysis on disputed facts because factual determinations are not appropriate at this stage. The parties have an ongoing dispute as to what constituted a breach such that plaintiffs would be entitled to damages. As previously noted, the opposing interpretations of the allegations of this case and timing of the breach are not matters to be resolved by this Court in this Report and Recommendation. Instead, we are only to determine whether Hosfield provides a reliable methodology in rendering his opinion.

According to Hosfield, a proposed class member can only claim damages if: (1) the class member purchased and paid for the MPA; (2) benefits for a product under the MPA were requested during the term that the MPA was in effect; (3) defendants failed to provide benefits under the MPA by not repairing or replacing the product for which benefits were requested; and (4) defendants failed to issue a refund for the MPA cost of the product under the MPA. (Hosfield Report at 8.) Based on Hosfield's review of the Greenes' information, he opines that they do not meet the criteria and have not been economically damaged. Hosfield further opines that Jackman's methodology cannot measure the alleged damages suffered by the proposed class members. Hosfield does not provide any alternative methodology for the plaintiffs' claims, instead focusing his opinions on why Jackman's methodology is unreliable. While Hosfield's methodology is arguably more difficult to evaluate because it does not involve alternative methodology, we find that it is still within his field of assessing damages because he is evaluating the damages calculations under defendants' theory of the case.

Hosfield considers certain data when reaching his conclusion that the Greenes did not suffer any economic damages; however, plaintiffs disagree with the data because it was produced after discovery and they did not have the opportunity to verify its information. Plaintiffs further contend that Hosfield should have independently verified the information he relied upon and that defendants have not shown that Hosfield's opinions were "based substantially on facts or data of the type reasonably

---

[3] It is defendants' position that a breach in the contract occurred if repair or replacement was requested and not performed and that that performance under the MPAs was always provided when requested, even if the product was not on the List.

9

relied upon by experts in his field." *U.S. ex Rel. Pecoraro v. Page*, 169 F. Supp. 2d 815, 821 (N.D. Ill. 2001). Specifically, plaintiffs take issue with Hosfield's reliance on the declaration of Danion Setzer, National Operations Manager, to support the conclusion that Sears honors all MPAs, regardless of whether they were on the Eligible Brands List. It is plaintiffs' position that Hosfield should not be entitled to rely on the allegedly untimely and undated declaration without independently verifying the facts. Defendants, however, contend that it was proper for him to rely upon the affidavit of a witness with personal knowledge. It is also defendants' position that their expert does not need to independently verify all of the facts upon which he relies. *See Tilstra v. BouMatic, LLC,* 791 F.3d 749, 753 (7th Cir. 2015) (The court finding that an expert witness did not need to verify all the facts upon which he relied and that he could rely on hearsay, "provided that such reliance is an accepted practice in his profession[.]").

As discussed above, a prominent factual dispute in this case is Sears' assertion that the List is not reflective of their intention to service products under the MPAs and that all MPAs were honored if service was requested. Defendants rely on the declaration of Mr. Setzer to support their position. Given Mr. Setzer's role, it was reasonable to Hosfield to also rely on Mr. Setzer's statements regarding Sears' practices. *See Artunduaga v. University of Chicago Medical Center,* No. 12 CV 8733, 2016 WL 7384432, at *5 (N.D. Ill. Dec. 21, 2016) (citing *Durukan Am., LLC v. Rain Trading, Inc.,* 787 F.3d 1161, 1164 (7th Cir. 2015) ("[F]ederal courts do not discount self-serving declarations that are based on an affiant's first-hand knowledge and observations.")). It is also worth mentioning that Hosfield also relied on the testimony of Nina Greene to help confirm whether services were performed on MPA agreements not on the List.

Further, defendants assert that the Sears' Repair History referenced by Hosfield contains data that was taken from business records maintained in the ordinary course of business. Plaintiffs, however, contend that the document was produced 16 months after the close of fact discovery as an exhibit to a motion and was not a business record. Plaintiffs also assert that they were unable to further investigate the record because of when it was produced. Moreover, plaintiffs reference Hosfield's lack of knowledge regarding where the information came from as well as his reliance on an attorney's statement that it came from a business record in support of their position that Hosfield failed to independently verify information.

As an initial matter, any arguments as to the appropriateness of the Repair History itself and its potential admissibility are not at issue for purposes of this motion, except to the extent they affect the weight afforded to it by Hosfield. Issues as to the admissibility of the Repair History may be presented at the appropriate time. It is noted, however, that a later finding of inadmissibility may impact Hosfield's ability to testify about the document in support of his position, thus affecting the weight assigned to his opinions.

While plaintiffs argue that Hosfield did not independently review the data contained on the spreadsheets upon which he relied, Hosfield testified that information

was consistent with deposition testimony and exhibits that he reviewed. (Mem. at Ex. 1, 137:17-23 and 140:1-3.) "[A]n expert witness is not required to verify all the facts on which he relies." *Tilstra,* 791 F.3d at 753; *see also Minemyer v. B-Roc Representatives, Inc.,* No. 07 CV 1763, 2009 WL 3757378, at *7 (N.D. Ill. Oct. 29, 2009) ("[T]here is no overarching general requirement, applicable in all cases, that a financial or economic expert independently verify each entry or document on which he bases his opinion."); *Tuf Racing Prod. v. Am Suzuki Motor Corp.,* 223 F.3d 585, 591 (7th Cir. 2000).

Defendants also contend that Hosfield properly relied on their statement of undisputed facts and that he reviewed the documents underlying the statement. As pointed out by plaintiffs, Hosfield more specifically testified that he *believes* he reviewed each document and deposition transcript cited in the statement, but he would have to go back and check. (Resp. at Ex. 1, 128:5-9.) Nonetheless, Hosfield identifies numerous documents upon which he relies in his report (Hosfield Report at Ex. 2), including the exhibits to the defendants' statement of undisputed material facts.

Based on the record before the Court, we find that Hosfield relied on appropriate documents in reaching his conclusion. The weight and quality to afford the documents relied upon by the expert is more appropriately assessed by the trier of fact and is not a basis for the exclusion of the expert's testimony. *See Manpower, Inc. v. Ins. Co. of Pennsylvania,* 732 F.3d 796, 806-09 (7th Cir. 2013) ("Reliability, however, is primarily a question for the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced."). As discussed, a number of the problems plaintiffs raise deal with questions of material fact or issues regarding the conclusions reached that are to be more properly assessed by the trier of fact at the appropriate time. In the event certain documents are later deemed inadmissible given the timing of their production, the Court may reevaluate the reliance on those documents and opinions that resulted from such reliance. For now, however, we find that Hosfield's opinions meet the reliability requirements.

### c. Relevance

Plaintiffs further contend that Hosfield's opinions will confuse, and not aid, the trier of fact because the opinions are based on defendants' statement of material facts and contain flawed legal conclusions. Therefore, it is plaintiffs' position that the trier of fact will not be assisted in understanding evidence or determining a fact at issue that laypeople may be unable to resolve on their own.

Determining whether an expert's proposed opinions will assist the trier of fact in assessing a factual issue is essentially a relevance inquiry. *Cage*, 979 F. Supp. 2d at 804; *see also Smith*, 215 F.3d at 718 (If the testimony "will assist the trier of fact with its analysis of any of the issues involved in the case,["] then the standard is met.). This Court has already addressed the documents Hosfield relied upon in forming his opinion. One of the opinions offered by Hosfield is that the Greenes have not incurred economic damages as a result of the services that were rendered by defendants. If the trier of fact agrees with defendants' theory of liability and timing of the breach, then Hosfield's

assessment may help assess factual issues regarding the merits of the Greenes' case. Therefore, we find that Hosfield's testimony meets the relevance requirements in this respect.

Plaintiffs, however, also take issue with Hosfield's purported impermissible legal conclusions. They argue that Hosfield repeatedly opines that for a breach of contract to have occurred, they must have requested repairs under the MPA that were never received. Defendants maintain that the opinions are not inadmissible legal conclusions, but that Hosfield is merely "rebutting Jackman's opinion that there is a reliable method to calculate damages because Jackman's methodology fails to take into account repairs and replacements Sears offered Plaintiffs and other customers." (Resp. at 13.) It is defendants' position that their expert offers concrete information against which the trier of fact may measure abstract legal concepts. Therefore, they contend that Hosfield will aid the trier of fact and is a relevant witness.

This Court agrees that an economic damages expert should not be rendering legal conclusions. *Jimenez v. City of Chicago,* 732 F.3d 710, 721 (7th Cir. 2013) ("As a general rule, accordingly, an expert may not offer legal opinions."); *Klaczak v. Consolidated Medical Transport Inc.,* No. 96 CV 6502, 2005 WL 1564981, at *3 (N.D. Ill. 2005) ("Seventh Circuit precedent, however, prohibits expert witnesses from offering opinions or legal conclusions on issues that will determine the outcome of a case."); *Good Shepherd Manor Found. Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003); *Client Funding Solutions Corp. v. Crim.,* 943 F.Supp. 2d 849, 863 (N.D. Ill. 2013) ("Opinions that amount to legal conclusions do not assist the trier of fact."). Contrary to defendants' position, particular statements made by Hosfield can be interpreted as impermissible legal conclusions. Certain opinions and statements extend beyond merely contradicting Jackman's opinions regarding the method to calculate damages. For example, Hosfield opines that "[d]efendants have not been unjustly enriched by extending MPAs to products not on the Eligible Brands list." (Hosfield Report, at 20.) Hosfield was retained to "prepare analyses to assist the Court and/or jury in considering, if the allegations in the Amended Complaint are determined to be true, whether, using the data and information that is available, a standard and reliable methodology exists to calculate damages for Plaintiffs' proposed class members[,]" and to comment upon Jackman's report. (*Id.* at 3.) Given the purpose of Hosfield's retention, his opinions regarding what allegedly constituted a breach in the contract and whether there was unjust enrichment are ultimate issues about which he should not be allowed to testify. *See Sanders v. City of Chicago Heights,* No. 13 CV 0221, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016).

The Court will not list each statement made by Hosfield that is alleged to have been an improper legal conclusion, but we do clarify that Hosfield is not an attorney and should not be rendering legal conclusions. Accordingly, to the extent Hosfield's testimony provides a legal conclusion regarding whether or not there was a breach or unjust enrichment, those opinions should be excluded.

### III. Recommendation

For the reasons stated above, this Court recommends that plaintiffs' motion to exclude the purported expert opinions of Mark J. Hosfield [177] is granted in part and denied in part, with the instruction that Hosfield is not to provide legal conclusions.

## Conclusion

Specific written objections to this Report and Recommendation may be served and filed within 14 days from the date that this order is served. FED. R. CIV. P. 72. Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTERED:

_____

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: March 8, 2018**