# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NINA GREENE and GERALD GREENE, individually and on behalf of all others similarly situated,<br>  Plaintiff<br><br>    v.<br><br>SEARS PROTECTION COMPANY, SEARS, ROEBUCK AND CO., and SEARS HOLDINGS CORPORATION,<br><br>  Defendants. | Case No. 15-CV-2546<br><br>Judge Jorge L. Alonso |

## MEMORORANDUM OPINION AND ORDER

For the reasons that follow, Defendants' Objections to the Report and Recommendation of the Magistrate Judge [189] on Defendants' motion to exclude the purported expert opinions of Christopher Jackman [156] are overruled, and Defendants' Objections to the Report and Recommendation [191] on Plaintiffs' class certification motion [141] are sustained in part and overruled in part. No objections were made to the recommendation to grant in part Plaintiffs' motion to exclude the purported expert opinions of Mark J. Hosfield [177]. The Reports and Recommendations are adopted as discussed herein. Status hearing previously set for August 8, 2018 is stricken and reset to August 29, 2018, at 9:30 a.m.

## DISCUSSION

Plaintiffs Nina Greene and Gerald Greene complain that from 1994 to 2014, they entered into and paid for several appliance-service agreements with the Sears, Roebuck & Company and Sears Protection Company (collectively "Sears" or "Defendants") that did not actually cover

1

their products.  According to Plaintiffs, Defendants breached their agreements, were unjustly enriched, and engaged in a deceptive business practice by selling "repair or replace" Master Protection Agreements ("MPAs") to Plaintiffs and a purported class for appliances Defendants had no intention of repairing or replacing.  Plaintiffs moved to certify a nationwide class on their breach of contract and unjust enrichment claims, and a Pennsylvania class on their claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*.

Plaintiffs' motion for class certification and the parties' cross motions to exclude the opinions of each other's damages experts were referred to the Magistrate Judge pursuant to Rule 72(b) of the Federal Rules of Civil Procedure.  The Magistrate Judge issued two Report and Recommendations in which he recommended granting Plaintiffs' motion to certify, denying Defendants' motion to exclude the purported expert opinions of Christopher Jackman, and granting in part Plaintiffs' motion to exclude the purported expert opinions of Mark Hosfield. [Dkt 189, 191.]  Before the Court are Defendants' objections to the recommendation to deny the motion to exclude Jackman's opinions, and their objections to the recommendation to certify the classes.  [Dkt 192, 193.]  This opinion assumes familiarity with the reports and does not repeat their descriptions of the relevant facts and legal arguments except as specifically necessary to address the Defendants' objections and consider the motions.

*Standard of Review*

The Court will set aside a Magistrate Judge's decision on "a pretrial matter not dispositive of a party's claim or defense" only if it is "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a).  The Court reviews *de novo* a Magistrate Judge's decision on a pretrial

matter that is dispositive of a party's claim or defense. Fed. R. Civ. P. 72(b)(3). The Court of Appeals has observed:

> *De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge . . . while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). Although the Magistrate Judge framed all of his decisions as recommendations, it is undisputed that the only dispositive issue before him was the class certification issue. Accordingly, the Court reviews the Magistrate Judge's recommendation on that issue *de novo*, but views his remaining decisions as orders reviewable only for clear factual or legal error.

### *Defendants' Motion to Exclude Jackman's Opinions*

Plaintiffs' claims are based on the central theory that Defendants engaged in a deceptive practice and breached their MPAs by selling policies for products which they did not cover. In support of their class certification motion, Plaintiffs offered the purported expert opinions of economist Christopher Jackman. Jackman opined based on data and information possessed by Sears that he could measure the damages of each purported class as a result of the conduct of which Plaintiffs complain. Specifically, utilizing historical versions of Sears' "Eligible Brands List," and other information, Jackman would identify products in an MPA dataset that were included as part of an aftermarket MPA sold by Sears but not eligible for coverage under the MPA. To determine damages, he would establish whether defendants issued refunds or credits for the products in the dataset, and subtract that amount from the MPA prices paid by customers

3

for those products. Defendants moved to exclude Jackman's opinions, arguing his methodology is unreliable and based on speculation because it was their policy to always repair a product or offer a replacement or refund, and because it fails to account for Sears' provision of repairs. The Magistrate Judge recommended denying Defendants' motion, upon a finding that Jackman's methodology was reliable, and that Defendants' challenge to it was based on disputed facts.

Defendants object to the Magistrate Judge's recommendation on the same basic grounds upon which they previously argued. According to Defendants, it was error to find Jackman's methodology reliable because they say he cannot identify injured class members, and Sears' Eligible Brands List cannot be dispositive of breach. As the Magistrate Judge noted, however, Plaintiffs have their own interpretation of the evidence and what it reveals. Although Defendants assert that their challenge is to the sufficiency of the foundation of Jackman's opinions, this Court agrees with the Magistrate Judge that it is at bottom a challenge not to the adequacy of the facts upon which Jackman relies but rather to the interpretation of those facts. The Seventh Circuit has repeatedly emphasized, however, that "the court's gatekeeping function focuses on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate") and *Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000) (court should not consider factual underpinnings of purported expert's testimony but should determine whether "[i]t was appropriate for [the expert]

to rely on the test that he administered and upon the sources of information which he employed")).

Jackman's damages model is appropriately tied to Plaintiffs' theory of the case. *See Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). It does not account for repairs under the MPAs because Plaintiffs assert such repairs are irrelevant to their allegations since Plaintiffs' claim is that breach occurred upon the sale of MPAs for uncovered products, not upon some later event. And in any event, Defendants misrepresent the record in arguing that Jackman had no method for accounting for class members who never requested service or who always got the service they requested. As Plaintiffs emphasize, Jackman's model explicitly considers class members who may have received replacements, refunds, and buyout offers [*see* dkt 142-20 at ¶¶ 22-23, 27-28, 31, 33], and Jackman testified that with access to Defendants' records of repairs, he could incorporate repairs into his analyses. [*See* dkt 157-1 at 98:02-99:21.] The Magistrate Judge appropriately weighed Jackman's report and testimony against the record. [Dkt 189 at 5-6.]

Defendants also argue that the Magistrate Judge erred by deferring merits issues essential to predominance. According to Defendants, the Magistrate Judge "simply determined that Jackman had a theory that might work for damages," and failed to determine if there were sufficient facts to support that theory. [Dkt 193 at 6.] To the contrary, the report and recommendation reflects a careful consideration of Jackman's methodology and the sources upon which it is based. [*See* dkt 189 at 3-4, 5.] In accordance with *Daubert* and its progeny, what the Magistrate Judge did not do was accept as dispositive defendants' version of the facts. *See Daubert*, 509 U.S. at 595; *Smith*, 215 F.3d at 718.

Notwithstanding Defendants' argument, this case is not like *American Honda, Inc. v. Allen*, 600 F.3d 813 (7th Cir. 2010). In that case, the Seventh Circuit held it was error of the

5

District Court to defer consideration and deny without prejudice a motion to exclude an expert's opinions supporting class certification despite the court's reliability concerns based on the expert's lack of empirical evidence, lack of peer review and inadequate sample size. *Id.* at 815. In vacating class certification, the Seventh Circuit explained that where a purported expert's testimony is critical to class certification, the District Court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on the issue of class certification. *Id.* at 815-816. Unlike in *American Honda*, here the Magistrate Judge did not decline to make the requisite analysis. Instead, he carefully weighed Jackman's methodology and the sources upon which he relied. Although Defendants insist that certain records are historically incomplete and that there are no other records upon which Jackman could incorporate repairs into his damage analysis, Jackman opines based on evidence including documents produced by Sears and deposition testimony to the contrary. [*See* dkt 151 ¶¶ 13-24, 30, 33.] This Court agrees with the Magistrate Judge that Defendants' challenge to Jackman's opinions go to their weight, and not their admissibility. *See, e.g., Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."); *Loeffel Steel Prods. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005). Accordingly, Defendants' objections are overruled.

*Plaintiffs' Class Certification Motion*

As set forth above, Plaintiffs seek to certify and the Magistrate Judge recommended certifying the following nationwide breach of contract and unjust enrichment class:

> All individuals and entities who paid for aftermarket MPAs (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a

6

retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs also seek to certify and the Magistrate Judge recommended certifying the following Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") class:

> All residents of Pennsylvania who paid for aftermarket MPAs (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs asserted that the relevant class period is March 25, 2000 to the present for the breach of contract claim, March 25, 2005 to the present for the unjust enrichment claim, and March 25, 2004 to the present for the UTPCPL claim. [Dkt 142 at 12.] Defendants opposed certification, arguing Plaintiffs cannot adequately represent the class, the class definition is impermissibly broad, and individual issues defeat commonality and predominance. The Magistrate Judge largely rejected Defendants' arguments as challenges to the merits based on disputed issues of fact. Defendants object to the recommendation, arguing that the proposed classes fail to confirm to Plaintiffs' theory of the case, the claims are not supported by common issues and proof, and the claims are inappropriate for class adjudication given the predominance of individual issues. As to Plaintiffs' UTPCPL claim, Defendants further argue that the requirement that Plaintiffs establish justifiable reliance makes the claim inappropriate for class resolution. The Court undertakes *de novo* review.

To maintain a class action, Plaintiffs must identify a class and demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

7

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs must also demonstrate that the proposed class meets one of the three conditions of Rule 23(b). Plaintiffs invoke Rule 23(b)(3) which requires them to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3).

*Class Definition*

At the threshold, Defendants assert that the Magistrate Judge erred in concluding that whether Plaintiffs' proposed class definitions fail to allege a legal injury is not an issue to be resolved at this juncture. According to Defendants, Plaintiffs' class definition does not conform to their theory of the case because it does not provide guidance on "who is aggrieved and belongs in the class based on Sears' action at the time of each MPA's formation." [*See* dkt 192 at 4.] Because Plaintiffs' class definition would include MPA holders who could have received some performance under their contracts, Defendants continue, Plaintiffs propose a "no-injury class" which should be rejected.

Defendants' argument, however, misunderstands Plaintiffs' theory of the case and description of the class. Plaintiffs' claims are focused on the premise that Defendants were unjustly enriched and breached their contracts by selling warranty coverage for products they could not or did not cover. Under Plaintiffs' theory, injury is inflicted upon purchase. Accordingly, the class Plaintiffs propose is tailored to include those people who bought what Plaintiffs call "illusory coverage." Under this theory, whether Defendants offered some repair or

8

buy-out in some instances are not issues defeating the correlation between Plaintiffs' claims and the class they propose. "Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("If commonality of damages were essential, then class actions about consumer products are impossible." (Internal quotations omitted)).

Defendants also object that the Magistrate Judge did not impose a temporal component on the classes Plaintiffs propose, and that to the extent the Court is inclined to impose one, the time period Plaintiffs propose for their breach of contract claim is too long. Although a time period was not expressly incorporated into the class definitions recommended by the Magistrate Judge, the Magistrate Judge referenced the periods proposed by Plaintiffs in his other report issued that same day. [*See* dkt 189 at 4 n 2.]

As Defendants correctly observe, however, the limitations period on Plaintiffs' breach of contract claim under Illinois law is 10 years, and under Pennsylvania law is shorter. Plaintiffs' unexplained request for a class period of 15 years is too long. Accordingly, Defendants' objection is sustained in this respect and Plaintiffs' proposed nationwide class definition is modified as follows:

> All individuals and entities who paid for aftermarket MPAs on March 25, 2005 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

Plaintiffs' proposed UTPCPL class definition is modified as follows:

> All residents of Pennsylvania who paid for aftermarket MPAs on March 25, 2004 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent

9

renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

*Numerosity*

Plaintiffs contend that the anticipated size of the class and the difficulty of joining all members meet Rule 23's numerosity requirement, and Defendants do not appear to disagree. The Court agrees that this standard is met.

*Commonality*

Plaintiffs contend that they meet the requirement of commonality because common questions exists across the purported class such as whether Sears sold "illusory coverage," or MPAs on products for which it did not and could not provide coverage. According to Plaintiffs, the determination of the truth or falsity of this common question will resolve a core issue common to the class. Defendants insist that commonality cannot be met because it is both not true that Sears made categorical decisions about whether certain products were covered under the MPAs, and because there are myriad of individual reasons why a product might not have been repaired or replaced. The Magistrate Judge rejected Defendants' arguments, finding that although the proposed class could include people who received some repair or replacement under their MPAs, because Plaintiffs' proposed damages methodology takes that into account, commonality is nevertheless demonstrated. While acknowledging the factual variations Defendants emphasize, therefore, the Magistrate Judge concluded that Defendants' arguments about performance were not a reason not to certify, but rather, were merits-based arguments based on Defendants' defenses to Plaintiffs' claims. Defendants object, repeating the argument that Plaintiffs cannot demonstrate commonality because a breach cannot be established at the point of sale but only upon individualized analysis of the reasons why a particular consumer was denied service. Defendants stress that MPAs were sold for a variety of products and in a variety

of circumstances, and thus they say, the claims are not suitable for class determination. According to Defendants, it was error not to rule on the merits of their assertions.

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, this requires a showing that class members have suffered the same injury, and that their claims depend upon some common contention. 564 U.S. 338, 351 (2011). While merits questions may be considered to some extent on a certification motion, as Defendants argue, they may only be considered "to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *accord Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). "[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Notwithstanding Defendants' objections, this Court agrees that Plaintiffs demonstrate a commonality of issues consistent with their theory of breach, unjust enrichment, and consumer fraud. Whether Sears sold policies for products that it did not and could not cover is a central question common to the class, and capable of proof at trial through common evidence. Defendants' insistence that they had no such policy, that MPAs are variable, and that Sears ultimately provided some performance under some consumers' MPAs does not defeat this common contention. *See Schleicher*, 618 F.3d 685 ("Defendants have approached this case as if class certification is proper only when the class is sure to prevail on the merits. That would resurrect the one-way intervention model that was ditched by the 1966 amendments to Rule 23. Under the current rule, certification is largely independent of the merits . . . and a certified class can go down in flames on the merits"). "Every consumer fraud involves individual elements of

11

reliance and causation. . . . [A] rule requiring 100% commonality would eviscerate consumer-fraud class actions." *Suchanek*, 764 F.3d at 759. Where, as here, the purported fraud is based on alleged conduct that was uniform as to all class members, it is well established that individual issues of reliance do not thwart class actions. *See Kramer v. Am. Bank & Tr. Co., N.A*., No. 11 CV 8758, 2017 WL 1196965, at *6 (N.D. Ill. Mar. 31, 2017).

Plaintiffs point to evidence of a common course of conduct supporting claims applicable to the class, and propose a damages methodology applicable to the class that takes into account issues regarding the provision of repairs or something less than a full refund. Because Plaintiffs' claims raise common questions susceptible to common proof across the class, they meet this component of the Rule. *See Suchanek*, 764 F.3d at 756 ("Where the same conduct or practice by the same defendant gives rise to the same kinds of claims from all class members, there is a common question."). Whether Plaintiffs will ultimately prove that Sears had the coverage position they assert is an issue to be determined another day. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376-77 (7th Cir. 2015) (plaintiffs need not prove existence of employer policy requiring off-the-clock work to establish commonality, but only that issue is capable of common proof).

*Typicality*

Typicality requires that the claims or defense of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Plaintiffs say their claims are typical of the class because they allege and must prove that they entered into MPAs and paid for coverage on products they say were never actually covered. Plaintiffs complain that they were misled into purchasing "illusory coverage," their payments conferred a benefit on Sears, and that Sears wrongfully kept those benefits. Defendants challenge these assertions, arguing that

because Plaintiffs obtained repairs on some products under their policies, and declined an offer for a cash buyout on still others, their claims are not typical of the class and Plaintiffs would not adequately represent the class.

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is "based on the same legal theory." *Oshana v. Coca-Cola Bottling Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (internal quotations omitted). Moreover, typicality "'may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' [since] the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Kramer*, 2017 WL 1196965, at *6 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 233 (7th Cir. 1983)). In this instance, Plaintiffs' claims arise from the same alleged course of conduct as those belonging to the class and Plaintiffs base their claims on the same legal theory as the claims belonging to the class. Despite any factual variances in the products listed in the MPAs or going to the claimed damages as a result of some repair, their claims have the same essential characteristics.

*Adequacy*

This inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Defendants do not contest the adequacy of class counsel but challenge Plaintiffs' adequacy for largely the same reasons they oppose typicality. Plaintiffs assert that they have been injured as a result of the sale of MPAs on non-covered items and the lack of a full refund. According to Plaintiffs, they therefore share an interest with the class in proving their claims and resulting damages. This Court agrees. That Plaintiffs received a partial refund may affect their damages, but it does not exclude them from the class. Because Plaintiffs' claims are based on the same legal theory as those of the class, typicality is satisfied.

*Predominance*

As mentioned above, under Rule 23(b)(3), a class may be certified only if questions of law and fact common to the members of the class predominate over questions affecting only individual members of the class. This requirement is met when a common nucleus of operative facts and issues underlies the claims brought by the proposed class. *See Messner*, 669 F.3d at 815. "Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action as an alternative to individual suits." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2012). It is a qualitative, not a quantitative concept. *Id.*

As discussed above, Plaintiffs assert that common questions capable of class-wide resolution include such central issues as whether Sears sold MPAs for products it did not cover and whether the terms of the MPAs provide Defendants with a defense. Plaintiffs contend that because they provide a damages model that reliably calculates class-wide damages flowing from the claims that they press, the individual issues upon which Defendants focus do not defeat the predominance of common questions of law or fact. According to Defendants, on the other hand, coverage determinations are fact-intensive and individual, thereby defeating predominance.

14

Defendants insist that the focus should not be on sale of the MPAs, but rather on their subsequent performance under them. Defendants contend that the remedies available to class members will depend on whether they received repairs under their MPAs, and if not, why not. Moreover, Defendants say, because it was their policy to provide repairs regardless of whether a product was on the Eligible Brand List, predominance cannot be found. Because the Magistrate Judge did not agree with Defendants' focus on repairs and the variety of factors contributing to them, Defendants argue the certification analysis fails.

This Court agrees with the Magistrate Judge's analysis, however, and concludes that Plaintiffs have demonstrated the predominance of common issues. "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case" and the whole class 'will prevail or fail in unison.'" *Bell*, 800 F.3d at 378 (quoting *Amgen*, 568 U.S. at 460). It is the predominance of common questions that is key, not whether the answers will be resolved in the plaintiffs' favor. *See Bell*, 800 F.3d at 376 (citing *Amgen*, 568 U.S. at 459). While Defendants heavily emphasize evidence supporting their assertion that Sears had no uniform coverage position flowing from the Eligible Brand List or otherwise, Plaintiffs also submit evidence supporting their claims and their position that Defendants engaged in standardized conduct with regard to the sale of MPAs. Unlike Defendants' cited authority, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011), where individual issues predominated over common ones on plaintiffs' claim that defendant insurer underpaid hail damage claims in bad faith, Plaintiffs' claims here rely on the assertion of Defendants' standardized conduct in the sale of coverage. Issues regarding Defendants' alleged course of conduct in selling MPAs are central issues capable of common proof for the class, and for the reasons discussed above Plaintiffs' damages methodology comports with their claims.

Defendants' objection notwithstanding, moreover, a finding of predominance does not adopt Plaintiffs' view of the case. Rather, it reflects the analysis a court must undertake in weighing class certification. The court "must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377.

Likewise, Defendants' arguments that some members of the class may have made a mistake in the information provided to Sears or that both contracting parties may have made a mistake in entering MPAs is "at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification." *Messner*, 669 F.3d at 823. "A class will often include persons who have not been injured by defendant's conduct, but this possibility, or indeed, inevitability, does not preclude class certification." *Bell*, 800 F.3d at 380.

*UTPCPL Class*

Defendants also contend that Plaintiffs' UTPCPL claim is inappropriate for class treatment because Plaintiffs' burden of showing "justifiable reliance" under the statue is incompatible with Rule 23's predominance requirement. According to Defendants, justifiable reliance cannot be demonstrated collectively because it requires individualized findings. The Magistrate Judge rejected this argument and recommended certifying the class, finding that justifiable reliance would be demonstrated by virtue of the class members' purchase of MPAs. Defendants object to the recommendation, arguing it is based on an inference that is impermissible under Pennsylvania law.

Defendants' objection is overruled. This Court agrees with the Magistrate Judge that Plaintiffs may prove the element of justifiable reliance by virtue of their purchase of the MPAs. Unlike Defendants' cited authorities, *Abraham v. Ocwen Loan Servicing*, LLC, 321 F.R.D. 125 (E.D. Pa. 2017), and *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, where the claims required individualized assessments of the reasons for the transactions, justifiable reliance may be shown by common proof here where the nature of the alleged deception and the transactions at issue do not permit alternate explanations.

*Timing of Class Certification*

Finally, the Court overrules Defendants' objection to the Magistrate Judge's recommendations based on the argument that he should have determined the merits of the defenses to Plaintiffs' claims or deferred ruling on certification until Defendants' summary judgment motion had been addressed. This Court already denied Defendants' request, and it was not within the scope of the referral to the Magistrate Judge to alter that decision. Having chosen this course of action, "a peek at the merits" could be taken "before certifying a class," but "this peek is limited to those aspects of the merits that affect the decisions essential under Rule 23." *Schleicher*, 618 F.3d 685.

## CONCLUSION

For all of the reasons discussed above, Defendants' Objections to the Report and Recommendation of the Magistrate Judge [189] on Defendants' motion to exclude the purported expert opinions of Christopher Jackman [156] are overruled, and Defendants' Objections to the Report and Recommendation [191] on Plaintiffs' class certification motion [141] are sustained in part and overruled in part. The Reports and Recommendations are adopted as discussed herein.

Status hearing previously set for August 8, 2018 is stricken and reset to August 29, 2018 at 9:30 a.m.

Date: 6/25/18

Jorge L. Alonso
United States District Judge